No. 24-735
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

JAIME ROGOZINSKI,

*Plaintiff-Appellant*,

v.

REDDIT, INC.,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the Northern District of California
No. 3:23-cv-00686-MMC
Hon. Maxine M. Chesney, United States District Judge

_____

## APPELLANT'S OPENING BRIEF

_____

James R. Lawrence III
ENVISAGE LAW
2601 Oberlin Road, Suite 100
Raleigh, North Carolina 27608
(919) 755-1317
JLawrence@Envisage.Law

Sean Gates
Charis Lex P.C.
225 S. Lake Avenue, Suite 300
Pasadena, California 91101
(626) 508-1715
SGates@CharisLex.com

Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, New York 11001
(516) 633-2633
Gregory@DigitalJusticeFoundation.org

Andrew Grimm
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
Andrew@DigitalJusticeFoundation.org

*Attorneys for Appellants*

## ORAL-ARGUMENT STATEMENT

This case presents important legal questions about the application of longstanding, time-honored trademark doctrines to an online context. Plaintiff-Appellant Jaime Rogozinski respectfully submits that oral argument would likely be of assistance to this Honorable Court in its resolution of this appeal, for legal and factual reasons.

Legally, the appeal presents important but fairly complicated applications of existing trademark law to an online context. Factually, the appeal presents a somewhat voluminous record, a somewhat complicated procedural history, and important factual nuances.

Mr. Rogozinski respectfully submits that 15-20 minutes of oral argument per side is appropriate.

# RULE 26.1 DISCLOSURE STATEMENT

(a)     Appellant Jaime Rogozinski is a natural person.


(b)     This is not a criminal case.


(c)     This is not a bankruptcy case.


Date: August 9, 2024                    Respectfully submitted,

                                        */s/ Gregory Keenan*_____
                                        Gregory Keenan

                                        *Attorney for Appellant*

# TABLE OF CONTENTS

**Page**

ORAL-ARGUMENT STATEMENT ........................................................II

RULE 26.1 DISCLOSURE STATEMENT ...........................................III

TABLE OF AUTHORITIES ............................................................ VI

INTRODUCTION ............................................................................1

JURISDICTIONAL STATEMENT .....................................................4

STATEMENT OF ISSUES ................................................................5

    I.    TRADEMARK OWNERSHIP ....................................................5

    II.    CDA-230 ........................................................................6

    III.    AMENDMENT ....................................................................7

STATEMENT OF THE CASE ............................................................8

    I.    FACTUAL BACKGROUND ....................................................8

        A.    Rogozinski creates the WALLSTREETBETS brand. ...............8

        B.    He uses Reddit as a medium to promote his brand. ...................8

        C.    Rather than offer to license, Reddit attacks his rights. ..............9

    II.    PROCEDURAL BACKGROUND ...............................................9

        A.    Motion to Stay ...............................................................10

        B.    First Motion to Dismiss ..................................................12

        C.    Second Motion to Dismiss ...............................................14

SUMMARY OF ARGUMENT ..........................................................16

iv

STANDARDS OF REVIEW ................................................................19

ARGUMENT ...................................................................................20

    I.    THE DISTRICT COURT ERRED ON TRADEMARK OWNERSHIP BELOW.....20

        A.    The District Court overlooked fundamental trademark principles, important trademark doctrines, and key facts in reaching its decision below. ......................................................20

            i.  First principles ..................................................20

            ii.  Media ..............................................................32

            iii.  Social media .....................................................38

            iv.  Reddit..............................................................42

            v.  CDA-230..........................................................45

        B.    In the alternative, inferences in Mr. Rogozinski's favor would allow factfinder to find for him and to find that Reddit is not the source of brand. .............................................46

    II.   THE DISTRICT COURT ERRED ON CDA-230. ........................48

    III.  THE DISTRICT COURT SHOULD HAVE GRANTED MR. ROGOZINSKI LEAVE TO AMEND. ...............................................................51

    IV.  THERE ARE SIGNIFICANT POLICY IMPLICATIONS TO THIS APPEAL. .......56

CONCLUSION ................................................................................58

STATEMENT OF RELATED CASES ....................................................59

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS .............................60

CERTIFICATE OF SERVICE ..............................................................61

# TABLE OF AUTHORITIES[1]

Page(s)

**Cases**

B & B Hardware, Inc. v. Hargis Indus., Inc.,
575 U.S. 138 (2015)........................................................................10

Barnes v. Yahoo!, Inc.,
570 F.3d 1096 (9th Cir. 2009) ......................................................14

Brookfield Communs., Inc. v. West Coast Entertainment Corp.,
174 F.3d 1036 (9th Cir. 1999) ......................................................21

Burri Law PA v. Skurla,
35 F.4th 1207 (9th Cir. 2022) ......................................................19

Jack Daniel's Props. v. VIP Prods. LLC, 599 U.S. 140 (2023)............................21

Mujica v. AirScan Inc.,
771 F.3d 580 (9th Cir. 2014) ........................................................19

Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,
494 F.3d 788 (9th Cir. 2007) ........................................................19

Rhoades v. Avon Prods.,
504 F.3d 1151 (9th Cir. 2007) ............................................... 11, 12

Sharp v. Activewear, L.L.C.,
69 F.4th 974 (9th Cir. 2023) ........................................................19

Vidal v. Elster,
602 U.S. 286 (2024)........................................................................22

**Statutes**

15 U.S.C. § 1127(a) ........................................................................13

47 U.S.C. § 230(c)(1)........................................................................12

**Other Authorities**

---

[1] In this Brief, all emphasis is added unless otherwise indicated.

In Re Florists' Transworld Delivery, Inc.,
    119 U.S.P.Q. 2d 1056 (T.T.A.B. 2016) .................................................. 19, 20

**Treatises**

MCCARTHY ON TRADEMARKS ............................................................. 18, 19

## INTRODUCTION

The medium is *not* the source.

If you purchase a product, the distributor or deliverer, the instrumentality or conduit through which that product gets into your hands, is not often the source behind that product. Rather, the medium is often just the mechanism for *how* a product got *from* its source *to* you.

Consider retailers. When strolling through the aisles at a local grocery store like an Albertsons or Ralphs, ordinary consumers know that the grocery store is *not* the source, but merely the retailer, of those Dannon or Yoplait yogurts on the shelf. It's not just food. Those who shopped at Sears knew Sears was selling appliances made by others.

The same is true of media, like newspapers and television. Whether it's the *Wall Street Journal* or the *Washington Post*, *Fox* or *MSNBC*, consumers know that products promoted during commercial breaks, and in the interstices of the printed page, were almost never the newspapers' products or the cable shows' products, but rather the *advertisers'* products.

And, it's true online. When we purchase products *from* Amazon, we know that they aren't always *Amazon* products—but products made by other companies or brands, from other sources.

1

The medium, conduit, or platform by which a brand eventually reaches its consumers is rarely its branded source—and consumers readily know this when they shop online or in person.

They know this for social media as well.

Facebook users, Instagram users, Snapchat users, and Twitter (or "X") users all readily know that most content and brand promotion on social-media platforms comes from other individual and corporate users. Such content comes from other users, advertisers, promoters, and the like—often from anyone *but* the platform itself. That basic insight informs this case.

Here, Plaintiff-Appellant Jaime Rogozinski created a brand, WALLSTREETBETS. Then he used a medium—the social-*media* platform of Defendant-Appellee Reddit, Inc.—to promote his brand. Just as with other social-media platforms, Reddit's users understood Reddit was the *medium—not* the source—of WALLSTREETBETS. They knew that someone else—*not* Reddit— had put WALLSTREETBETS there and stood behind it, because that's how Reddit works.

Yet, when Mr. Rogozinski's WALLSTREETBETS brand became very valuable, Reddit didn't want to share any of its profits from *his* brand with *him*, or even to license the brand from him.

Instead, Reddit attacked his rights.

2

Then, in a set of decisions that flout first principles of trademark, the District Court agreed with Reddit—holding Reddit was the owner merely because the brand appeared on *its* media platform.

Under the District Court's theory, if a family began promoting a new restaurant on Twitter, then *Twitter* would *own* their restaurant trademark. If an aspiring model was promoting her brand on Instagram, *Instagram* would *own* her personal brand, on the District Court's view. If an aspiring novelist began first promoting his sci-fi series on a Facebook group, the District Court's theory is that Facebook would own the sci-fi brand.

That's as radical as it is wrong. No one would seriously think that Twitter was the *source* of a family's food truck or the *source* of a novelist's sci-fi series. And that instinct is correct: first principles of trademark law dictate that no court should be saying that the mere conduit *owns* merely because someone uses that conduit, to *promote* and *advertise* their brand.

The *New York Times* doesn't *own* the brands that choose to first advertise in its pages. So too here. Accordingly, this Court should reaffirm time-honored principles of trademark ownership and reverse.

3

## JURISDICTIONAL STATEMENT

(A)    This action arises under federal trademark law, 2-ER-173¶97-175¶129 (am. compl.), 6-ER-914¶67-917¶91 (initial compl.) as well as related state-law claims, 2-ER-176¶130-179¶157 (am. compl.), 6-ER-917¶92-919¶119 (initial compl.).   The District Court had original federal-question jurisdiction over the federal claims.   See 28 U.S.C. § 1331 (federal-question jurisdiction); 15 U.S.C. § 1121(a) (specific grant of jurisdiction for federal trademark claims).   The District Court exercised supplemental jurisdiction over the state-law claims.   See 28 U.S.C. § 1367(a).

(B)    The District Court entered final judgment.   1-ER-2.   This Court has appellate jurisdiction.   See 28 U.S.C. § 1291.

(C)    The District Court entered judgment on January 16, 2024.   1-ER-2; see Fed. R. App. P. 4(a)(7)(A)(ii).   The notice of appeal was filed twenty-four days later, on February 9.   6-ER-933.   The appeal is timely.   See 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).

(D)    The District Court dismissed all claims in suit and entered judgment. 1-ER-2 (judgment), 1-ER-3-14 (order).

# STATEMENT OF ISSUES

## I.   TRADEMARK OWNERSHIP

Mr. Rogozinski created a brand called WALLSTREETBETS and then used Reddit's platform as a conduit to promote his brand.  Like most social-media platforms, Reddit is designed so that users that use its platform to promote themselves and their brands.  Reddit's users would know that this is how Reddit works and, further, that Mr. Rogozinski was the person behind the brand, working to promote his WALLSTREETBETS brand.  In trademark, consumer recognition of the "source" of the brand determines who owns the trademark.  15 U.S.C. § 1127(a) (defining a "trademark").  *Is Mr. Rogozinski the trademark owner of the brand in the sense that he would be recognized as its source by regular users on Reddit?*

*Appellant's Answer*:  **Yes**, longstanding trademark principles connect ownership with source identification—not the mere conduit or media used to promote a brand.

5

## II.    CDA-230

Communications Decency Act § 230—*i.e.*, 47 U.S.C. § 230(c)(1)—by its text and purpose was enacted to prohibit punishing websites for what third parties do on them.  CDA-230, however, protects them only when (1) the cause of action treats the website as a publisher or speaker *with respect to the third-party speech* and further only operates (2) as a filter on the factual allegations, filtering out those factual allegations that fit within its ambit but not barring litigation entirely when one non-necessary fact is within CDA-230's ambit.  The District Court, however, expanded CDA-230 beyond editorial activities with respect to third-party-posted material and then treated CDA-230 as a bar, not a filter.  *Did the District Court properly apply this Court's precedents on CDA-230?*

*Appellant's Answer*: No, CDA-230 requires a nexus between the editorial function and the third-party-posted material and also required the District Court to filter facts it felt were non-actionable, but then see if the claims could survive without those facts.

6

**III.** **AMENDMENT**

In opposing the dismissal of his _first_-amended complaint, Mr. Rogozinski sought leave to amend. Then, the District Court denied leave to amend without explanation, giving no further opportunity to cure what it viewed as pleading deficiencies, where further facts could cure the purported deficiencies. _Should the District Court have afforded Mr. Rogozinski another chance to amend?_

_Appellant's Answer_: **Yes**, amendment should be freely given as it would not have been futile here.

## STATEMENT OF THE CASE

### I.   FACTUAL BACKGROUND

The essential background of the case is set forth in the first-amended complaint and taken as true for purposes of this appeal of a Rule 12(b)(6) motion to dismiss.  2-ER-140-180 (1st-am. compl.).  There are three critical facts: (1)  Mr. Rogozinski created the mark WALLSTREETBETS; (2) he used Reddit as a social-media platform and conduit to promote his WALLSTREETBETS brand; and (3) he did not license it to Reddit because did not wish to license it from him but rather to aggressive attack his trademark rights.

#### A.   Rogozinski creates the WALLSTREETBETS brand.

Plaintiff-Appellant Rogozinski is an entrepreneur who created the brand WALLSTREETBETS during the Great Recession because of power asymmetries he felt existed in the financial-service and investment-services industries.  2-ER-144¶16-145¶20.

#### B.   He uses Reddit as a medium to promote his brand.

Mr. Rogozinski decided to use Reddit as a medium and conduit to promote his brand and did so, but nowhere assigned any of his rights in his WALLSTREETBETS brand and, indeed, used the platform to promote it—with himself remaining the ultimate source behind it and Reddit nowhere indicating any source-ownership with the brand.  2-ER-145¶21-152¶38.

8

**C.    Rather than offer to license, Reddit attacks his rights.**

Mr. Rogozinski's promotion efforts paid off and his brand became successful—through his efforts at promotion and brand management that indicate him as the source of WALLSTREETBETS.  2-ER-152¶39-155¶48.  Yet, just as he was growing his brand, Mr. Rogozinski was forced to deal with Reddit's highly aggressive attempts to use its platform to seize his brand and limit his control and seize his ownership over his own brand from him—never attempting or offering to license it.  2-ER-155¶49-161¶65.  Notably, Mr. Rogozinski's brand promotion on the platform helped Reddit in many ways, but nonetheless Reddit aggressively sought to attack Mr. Rogozinski's trademark rights in his brand through administrative actions in the trademark office.  <u>E.g.</u>, 2-ER-167¶83-172¶96.

## II.    PROCEDURAL BACKGROUND

When his further attempts at amicable resolution and compromise failed, Mr. Rogozinski filed suit.  6-ER-894-921 (initial compl.), 6-ER-922-932 (exhibits thereto).  His initial complaint's primary claim sought a declaration of his ownership over his WALLSTREEBETS mark.  6-ER-914¶¶67-69.  He sought additional relief under other federal, 6-ER-914¶70-917¶91, and state claims, 6-ER-917¶92-919¶117.

## A.    Motion to Stay[2]

Reddit sought to stay judicial proceedings on *only* the federal claims pending resolution of the Parties' administrative disputes before the trademark office.  4-ER-370.

Reddit's openly-stated strategy was to try to use the prospect of a procedural victory before the trademark office to forever preclude substantive consideration of Mr. Rogozinski's rights.  4-ER-379 (citing B & B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. 138, 160 (2015)).  So, Reddit asserted that it'd suffer "hardship" litigating in federal court.  4-ER-380 ("hardship and inequity").  And, Reddit accused Mr. Rogozinski of "forum shopping" by litigating in *Reddit*'s homebase, pursuant to *Reddit*'s forum-selection provisions, included in *its* terms of use.  4-ER-383.

Mr. Rogozinski opposed.  3-ER-304-316.  He observed that a partial stay on his federal claims *only* would create a "three-front battle"—with litigation raging across two administrative proceedings and simultaneous federal-court litigation on his state claims.  3-ER-308 ("triple the number of proceedings").  He further pointed out that had he filed in the Northern District of California pursuant to "Reddit's *own* User Agreement"—not forum-shopping.  3-ER-308.

---

[2] Although Reddit's motion to stay, 4-ER-369, and first motion to dismiss, 6-ER-827, were filed concurrently, the motion to stay is addressed first because it was ruled upon first, 2-ER-194.

Reddit's stay request was misplaced, Mr. Rogozinski pointed out, because the trademark office has a standard practice of staying *its* proceedings in deference to federal litigation, 3-ER-312 (citing McCarthy on Trademarks § 32:48); because the trademark office's decisions would be subject to do-over in federal court on *de novo* review anyway, 3-ER-313 (citing 15 U.S.C. § 1071); and because this Court had characterized Reddit-like stays as likely to "*waste everyone's time*[,]" 3-ER-312 (quoting Rhoades v. Avon Prods., 504 F.3d 1151, 1165 (9th Cir. 2007)).

Reddit doubled down in reply. 3-ER-229-238.

While Reddit's stay motion was pending, the trademark office suspended its proceedings. The office first *consolidated* Reddit's two separate administrative proceedings. 2-ER-211 ("Here, consolidation is appropriate."). Then, it *suspended* them pursuant to its standard policy—the very policy Mr. Rogozinski had already pointed out in opposing Reddit's federal-court stay. 2-ER-212 ("It is the policy of the Board to suspend proceedings when the parties are involved in a civil action[…]").

The trademark office's analysis refuted Reddit's *ad hominem* attacks on Mr. Rogozinki. E.g., 2-ER-213-215, 2-ER-214 (Rogozinski's "motion to suspend was submitted promptly after the filing of the civil action. Undue delay is not apparent from the record.").

The District Court denied a stay. 2-ER-194-203; see 2-ER-203 (denying stay centrally based upon the authorities cited and discussed by Rogozinski in his opposition—*i.e.*, MCCARTHY ON TRADEMARKS § 32:48 and Rhoades, 504 F.3d at 1165 (9th Cir.)).

## B. First Motion to Dismiss

Reddit had also filed a Rule 12(b)(6) motion to dismiss the initial complaint. 6-ER-828.

Reddit's primary argument as to *trademark ownership* focused on the fact that Reddit was a conduit or instrumentality—*i.e.*, the mere medium that "provides the technical services that enable the existence of the platform[.]" 6-ER-855. It then centrally relied upon an authority going to a different question. 6-ER-855-856 (discussing In Re Florists' Transworld Delivery, Inc., 119 U.S.P.Q. 2d 1056, *5 (T.T.A.B. 2016)).

Reddit's primary argument as to the *state claims* was that they were barred by 47 U.S.C. § 230(c)(1), a provision of telecommunications law colloquially called "CDA-230." 6-ER-841-844. Notably, in invoking CDA-230, a provision that only protects Reddit for what *others* do on its platform, Reddit was making an implicit-but-fundamental concession that it's *not* the *source* of what Mr. Rogozinski posted—*i.e.*, WALLSTREETBETS. 6-ER-844 ("third parties (**not Reddit**) posted").

12

Mr. Rogozinski opposed. 3-ER-259. He drew a critical distinction between the conduit or instrumentality used to promote a brand (Reddit) and the person or entity that consumers would recognize stood behind the brand (Rogozinski). 3-ER-279. He distinguished Reddit's CDA-230 authorities. 3-ER-276-277.

Reddit replied, 3-ER-239, doubling down upon its reading of its CDA-230 cases, 3-ER-243-245, and doubling down upon its reading of its inapposite trademark-office case, 3-ER-253-255 (discussing <u>Florists' Transworld</u>, 119 U.S.P.Q. 2d 1056).

The District Court vacated its hearing, 2-ER-206, and granted Reddit's motion, 1-ER-15.

As to *trademark ownership*, the District Court overlooked a fundamental concept entirely. 1-ER-18-21. While exclusively focusing on trademark's *use-in-commerce* requirement, 1-ER-19-20 (quoting 15 U.S.C. § 1127(a)'s "use in commerce" definition), the District Court incorrectly refused to consider ""whom the market identified as the 'source' of the mark"—finding "no authority for such proposition[.]" 1-ER-19.[3]

---

[3] The "authority" for such a proposition that trademarks must be and are definitionally source identifiers is, first and foremost, the statute itself: "***The term 'trademark' includes any word, name, symbol, or device, or any combination thereof [... used]*** *to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and* ***to indicate the source of the goods, even if that source is unknown.***" 15 U.S.C. § 1127(a) (defining [continued]

13

As to the _state claims_, the District Court held they were barred by CDA-230. 1-ER-24-27. The District Court properly stated CDA-230 elements. 1-ER-24 (quoting Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1100–1101 (9th Cir. 2009)).

Yet, the District Court erred in applying those elements as though publisher-or-speaker activities were insulated regardless of their connection to third-party posting. 1-ER-24-27. Yet, the District Court granted Mr. Rogozinski leave to amend his complaint. 1-ER-29.

### C.    Second Motion to Dismiss

Mr. Rogozinski filed his first-amended complaint. 2-ER-140. Reddit moved to dismiss it again. 2-ER-79. Mr. Rogozinski opposed. 2-ER-49. Reddit replied. 2-ER-32. Again, the District Court did not hold a hearing. 2-ER-31. And it granted the motion to dismiss, 1-ER-3, this time _without_ leave to amend, 1-ER-14. It entered judgment. 1-ER-2. And, Mr. Rogozinski timely filed his notice of appeal to this Court. 6-ER-933-934.

Three issues are before this Court: (1) trademark ownership, 1-ER-6-8, see Section I, _infra_; (2) CDA-230, 1-ER-10-13, see Section II, _infra_, and (3) leave to amend, 1-ER-14, see Section III, _infra_.

---

"trademark"). Source identification is definitionally what trademark law is about. Id.; see id. (defining "service mark"); 1 GILSON ON TRADEMARKS § 1.02 (2024).

15

## SUMMARY OF ARGUMENT

I.  <u>*Trademark Ownership*</u>: Source-identification is the *sine qua non* of trademark protection.  As such, the District Court erred by holding Reddit to be the owner of a trademark when Reddit was not the source behind that mark or associated service.  Indeed, given how Reddit works and how Reddit has chosen to structure itself, no ordinary consumer and no Reddit consumer would think that Reddit, rather than Mr. Rogozinski, was the source behind the WALLSTREETBETS mark.  After all, ordinary customers understand that the medium distributing the product is not itself the source.  Indeed, in analogous ownership disputes, courts have applied a presumption in favor of those like Mr. Rogozinski over mere distributors, like Reddit.  Moreover, courts have recognized that the mere use of a conduit or instrumentality like Reddit to promote and advertise a mark on behalf of a source like Mr. Rogozinski strengthens Mr. Rogozinski's trademark rights, source identification, and clarifies his ownership.  Properly applied trademark first principles make clear that Mr. Rogozinski, not Reddit, was the source behind the mark.  Accordingly, he—not Reddit— owns the operative mark.  The District Court's contrary conclusion should be reversed.

16

II.   *CDA-230*:  The Order below erred by improperly dismissing state law claims under CDA–230 when those claims did not "inherently require" the court to treat Defendant as a publisher or speaker of content provided by another. First, the Order overlooked the necessary nexus between the 2 and 3 elements of a CDA defense. Second, rather than filter out publisher related facts, and then re-evaluate whether the complaint nevertheless stated a claim, the Order treated CDA-230 as a complete bar to a claim once any publisher related fact was identified. In both ways, the Order dismissed claims that did not inherently require the court to treat Defendant as a publisher or speaker. That was error; the dismissal of those state law claims should be vacated.

III.  *Amendment*: The District Court dismissed *with* prejudice and *without* leave to amend Mr. Rogozinski's *first*-amended complaint, *after* he sought leave to amend, *without* analysis of amendment, and on deficiencies he could cure by amendment.  Leave to amend should have been granted below, at least once more.  Thus, the District Court's denial of leave to amend should be reversed.

17

IV.  _Policy_: This appeal presents a narrow but important issue of trademark law: ownership.  No infringement questions and no liability questions are before this Court on appeal.  Indeed, one could think that there's no infringement going on whatsoever and they should still reverse as to ownership.  There are also significant policy considerations to the trademark-ownership issues on appeal.

## STANDARDS OF REVIEW

I.    *Rule 12(b)(6)*: This Court reviews the District Court's dismissal of Mr. Rogozinski's claims **de novo**.  E.g., Mujica v. AirScan Inc., 771 F.3d 580, 589 (9th Cir. 2014) ("Dismissal for failure to state a claim under Rule 12(b)(6) is reviewed **de novo**.  In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all factual allegations in the Complaint and draw all reasonable inferences in favor of the nonmoving party."); see also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n, 494 F.3d 788, 794 (9th Cir. 2007) ("A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").


II.   *Amendment*: The Court reviews this denial of leave to amend **de novo**.  E.g., Burri Law PA v. Skurla, 35 F.4th 1207, 1217 (9th Cir. 2022) ("Generally, plaintiffs should be granted leave to amend their complaints unless it is clear, upon **de novo review**, that the complaint could not be saved by any amendment."); Sharp v. Activewear, L.L.C., 69 F.4th 974, 979 (9th Cir. 2023) ("**We review de novo** the district court's dismissal for failure to state a claim and its denial of leave to amend where such denial rests upon futility grounds.").

19

## ARGUMENT

### I. THE DISTRICT COURT ERRED ON TRADEMARK OWNERSHIP BELOW.

#### A. The District Court overlooked fundamental trademark principles, important trademark doctrines, and key facts in reaching its decision below.

Below, the District Court never engaged meaningfully the key principles that it should have applied to determine trademark owner, *i.e.*, to guide its analysis of who stands behind a mark as the source of that mark, from the consumer perspective, taking into account the distinction between an *instrumentality* of commerce and the underlying *source* of a brand. Had, the District Court considered these principles, among others, it would have readily and easily come to the opposite conclusion regarding trademark ownership given how Reddit works.

##### i. First principles

The District Court's order overlooked and ran afoul of trademark first principles. Specifically, it gave no consideration to the *sine qua non* of trademark protection: source and source-identification. In doing so, it disregarded consumer perspective—trademark's central focus. Moreover, the District Court contravened a recognized *presumption* in trademark law—a *presumption* cuts against distributors, like Reddit, in ownership disputes such as this.

Accordingly, the dispositive Order below, committed three central errors:

1. The Order disregarded the *source* of the mark when assessing first use.

2. The Order ignored *consumer perspective* regarding ownership.

3. The District Court disregarded a key legal *presumption* as to ownership.

For any of those reasons standing alone, and certainly all of those reasons taken together, the Order below should be corrected—and reversed.

* * * * *

**<u>First</u>**, the *sine qua non* of trademark protection is source and source-identification. Source-identification is trademark's central function. Source-identification is trademark's basic purpose. So, an Order that ignores source misses the mark. It fails to grasp that the ownership turns on who is the *source* behind the first use.

This Court has been clear: they "purpose of a trademark is to help consumers identify the **<u>source</u>**[.]" <u>Brookfield Communs., Inc. v. West Coast Entertainment Corp.</u>, 174 F.3d 1036, 1051 (9th Cir. 1999). The Supreme Court's echoed this basic trademark truism: source-identification is trademark's "***primary mission***." <u>See</u> <u>Jack Daniel's Props. v. VIP Prods. LLC</u>, 599 U.S. 140, 156 (2023).

21

Since inception, "indicating the source" behind the mark has been amongst the venerable "historical rationales of trademark law." Vidal v. Elster, 602 U.S. 286, 299-300 (2024).

Source is at the heart of the statute's definition of what a "trademark" even is. 15 U.S.C. §1127 ("to indicate the source"). That aspect of the statute's definition "describes every trademark's 'primary' function: to identify the origin or ownership of the article to which it is affixed." Jack Daniel's, 599 U.S. at 145-146; id. at 156 ("From its definition of 'trademark' onward, the Lanham Act views marks as source identifiers[.]").

Indeed, source-identification is the basic function of trademark. As the Supreme Court has explained: "Trademarks can of course do other things: catch a consumer's eye, appeal to his fancies, and convey every manner of message. But whatever else it may do, a trademark is not a trademark unless it identifies a product's source." Id. at 145-146.

Source-identification is trademark's fundamental purpose. Trademark law rewards the source behind the "source-identifying" mark. See Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 163-164 (1995). A "basic objective[] of trademark" is to reward the source behind the mark. Id. at 163.

With its focus on source and source-identification, trademark law ensures that the source behind the mark "will reap the financial, reputation-related rewards associated with a desirable product." Id.

That's why ownership is about the source behind the first use. As a leading trademark treatise explains, the "right to a trademark comes from its use. […] Actual use of a mark ***that identifies the source*** of goods and distinguishes it from others creates ownership of a common law trademark." 1A GILSON ON TRADEMARKS § 3.02 (2024).

That use of a mark as a "source-identifying function" gives rise to trademark ownership. Brookfield, 174 F.3d at 1051. Accordingly, trademark ownership is "governed by priority of use" as a source-identifier. Id. at 1047; Sengoku Works Ltd. v. RMC Int'l, Ltd., 96 F.3d 1217, 1219 (9th Cir. 1996). Conferring ownership to the source behind the first use "helps to protect source-identifying trademarks[.]" Hana Fin., Inc. v. Hana Bank, 735 F.3d 1158, 1164 (9th Cir. 2013); Brookfield, 174 F.3d at 1051 ("used by a person … to identify").

At core, trademark is concerned with source and source identification. And, ownership turns on the source behind the first use. Yet, the District Court fundamentally misunderstood this. 1-ER-19. It attacked the foundation and first principle of trademark that the "'*owner*' of a trademark is the person 'whom the market identified as the source of the mark" in its first order. 1-ER-19.

23

It suggested that there is no authority for this proposition. 1-ER-19. That deeply incorrect view gives a sense as to why the District Court made pervasive error throughout: it misunderstood the basic task was of figuring out *who* was the *source* behind the WALLSTREETBETS brand. And, that source, was indisputably Mr. Rogozinksi on this record.

Then, in its second order, the District Court failed to mention source of the mark at all—wholly ignoring a central aspect of deciding ownership. Its order wholly overlooks and never mentions *source* at all—when depriving Mr. Rogozinski of what's clearly a WALLSTREETBETS brand that sources back to him. 1-ER-1-14. Because he District Court flouted a first principle of trademark law, it should be reversed.

**_Second_**, at core, trademark is concerned with *consumer perspective*. Accordingly, an Order that ignores the consumer perspective is an order that contravenes basic purposes and first principles.

The very "purpose of a trademark is to help **_consumers_** identify the source[.]" Brookfield, 174 F.3d at 1051 (9th Cir. 1999). That's why, a symbol becomes a trademark when it is used in a manner that creates in the mind of the public "**_an association among consumers_** between the mark and the mark's owner." Id.

Accordingly, "most issues in trademark law should be determined from the **perspective of the ordinary purchaser** of these kinds of goods or services." See Hana, 574 U.S. at 422; Hana Fin., Inc. v. Hana Bank, 735 F.3d 1158, 1164 (9th Cir. 2013) (same); 3 MCCARTHY ON TRADEMARKS § 17:26 (4th ed. 2013) (making similar point).

After all, source-identification turns on how "customers may come to treat" a particular symbol. Qualitex, 514 U.S. at 163. And, the "source" of a mark turns on what a symbol means "in the minds of the public" when they view that mark. Id.

Trademark's "source-designation function" is fundamentally concerned with consumer perspective; it boils down to "ensuring that **consumers can tell** where goods come from." See _Punchbowl, Inc. v. AJ Press, LLC_, 90 F.4th 1022, 1030 (9th Cir. 2024). Indeed, a trademark's source turns on "which party the **_public believes_** stands behind the product." See Sengoku, 96 F.3d at 1220; id. at 1222 ("consumers believed"). As such, trademark's focus is on "the public perception" of a mark and with "what the public actually did perceive" the source of the mark to be. See Premier Dental Prods. Co. v. Darby Dental Supply Co., 794 F.2d 850, 854 (3d Cir. 1986).

The gravamen is the "actual perception" of the public. See id.

25

Thus, at core, trademark is concerned ordinary consumers "***perspective***[.]" See Hana, 735 F.3d at 1164. It asks "which party the ***public believes*** stands behind the product." Sengoku, 96 F.3d at 1220.

Yet, below, the District Court never address who the *public* would have identified as the source behind the first use. That's because the District Court had already *rejected* applying the first-principle of source entirely. 1-ER-19. So, it just completely ignored *source*—and then turned a blind eye to *how* to determine source: *customer/public perception*.

When it comes to consumer perspective, the District Court's orders turn a blind eye. Those two flawed order never make the key inquiry: "which party the public believes" is the source of the mark? See Sengoku, 96 F.3d at 1220. ***Reddit or Rogozinski***?

The dispositive order below, 1-ER-3-14, doesn't remotely address *that* question at all. It should have. Likewise, the first Order simply assumes that the owner is Reddit without *any* discussion whatsoever of public perception or consumer perspective. 1-ER-21.

All this, on a pleadings posture, without engaging the key doctrinal question of *who* the ordinary Reddit user believed to be the source behind the WALLSTREETBETS mark. The District Court simply never addressed that critical question of consumer perspective.

26

***Third***, there's a long-standing *legal* presumption regarding ownership that is central to ownership disputes.

That presumption cuts strongly against distributors (like Reddit) and in favor of manufacturers (like Rogazinski). By ignoring that presumption of ownership below, the District Court contravened bedrock trademark principles and frustrated trademark's basic purposes.

Disputes over trademark ownership "often arise" in the manufacture-distributor context. Sengoku, 96 F.3d at 1220 (9th Cir. 1996). Such ownership disputes arise, where a mark is used on goods made by one person but distributed and "marketed" by another.[4] Id.

In such cases, "in the absence of an agreement between the parties, the *manufacturer* is presumed to own the trademark." Id. ("the **presumption** in favor of the manufacturer"); id. at 1221 ("the general rule regarding the presumption in favor of the manufacturer"). *In short, this Court recognizes a presumption against distributors in trademark ownership disputes as against manufacturers* (who are arguably more removed from the consumer but better identified as the *source* of the product in question itself).

---

[4] Of course, insofar as Reddit is a passive conduit for *Rogozinski*'s promotions, Reddit has an even weaker case to being the trademark source and, therefore, the owner.

This Court is not alone in recognizing this long-standing presumption regarding ownership. See, e.g., Covertech Fabricating, Inc. v. TVM Bldg. Prods., 855 F.3d 163, 171 (3d Cir. 2017) ("the manufacturer is the presumptive trademark owner unless the distributor rebuts that presumption"); Energy Jet, Inc. v. Forex Corp., 589 F. Supp. 1110, 1116 (E.D. Mich. 1984)("there is a legal presumption that the manufacturer [not the distributor] is the owner of the mark."); Hank Thorp, Inc. v. Minilite, Inc., 474 F. Supp. 228, 236 (D. Del. July 10, 1979) ("legal presumption" in favor of the ultimate source); Lutz Superdyne, Inc. v. Arthur Bron & Bro., Inc., 221 U.S.P.Q 354 (T.T.A.B. 1984) ("in the absence of an agreement, there is a legal presumption that the manufacturer [not the distributor] is the owner of the mark.").

Indeed, a leading Treatise author explains that this legal presumption of ownership, is a **strong** presumption:

> In the absence of such an agreement, however, the courts find that there is a strong presumption that the manufacturer owns the mark. A distributor does not acquire trademark ownership simply by selling and distributing goods bearing a manufacturer's trademark, without an express or implied acknowledgement or transfer of rights by the manufacturer. Thus, the "first use" test for ownership does not apply in this situation. Whether such rights have in fact been transferred is a question of fact to be determined on a case-by-case basis.

1A GILSON ON TRADEMARKS § 3.02 (2024).

This presumption reflects trademark law's concern with ultimate source and its focus on consumer perspective about the *source of the product*.

After all, protecting the ultimate source behind a mark helps the public "make their selections based upon the reputation, ***not merely of the immediate vendor***, but also of the [original] manufacturer." See Vidal v. Elster, 602 U.S. 286, 300 (2024). The presumption against distributors in ownership disputes, like the present one, reflects a basic principle

It reflects the principle that the owner/source (like Rogozinski) can use the *instrumentalities* of another person/entity (like Reddit), including the services of another business, to distribute their own mark without losing his ownership rights in that mark.

Consider a consumer looking at a brand of cookies (like Oreos) while walking through a retail grocery store like Safeway. Consumers would readily recognize Oreos as the ultimate source, even though Safeway was the immediate vendor.

Or, suppose a consumer saw an advertisement for Coca-Cola in the *New York Times*. Consumers wouldn't think the *New York Times* was the ultimate source just because it was the immediate medium through which they saw the brand.

Or, suppose a consumer saw a family taqueria advertising on Facebook. That consumer wouldn't think Facebook was the ultimate source of the tacos just because it was the immediate online platform delivering the branding.

29

In all of these examples, and properly taken from the *consumers' perspective*, it is the ultimate source behind the brand rather than the immediate medium distributing the branded goods or services that matters with respect to trademark ownership.

That's why there is a strong "presumption" that the manufacturer, not the distributor, owns the mark: because trademark is concerned with *source*, not *delivery*. See Sengoku, 96 F.3d 1217, 1220 (9th Cir. 1996).

The District Court's ownership determination contravened this strong legal presumption. Notably, the dispositive Order cited Sengoku as setting the test of ownership. 1-ER-6. Then, it failed to apply the Sengoku presumption *against* distributors. In doing so the Court committed two central errors.

*First*, it ignored Sengoku's distinction between distributing uses and manufacturing uses of a mark. That's a distinction *with* a difference in ownership disputes with distributors.

*Second*, in purporting to apply Sengoku's ownership test, 1-ER-6-8, the District Court directly contravened Sengoku's presumption. Indeed, the Order below flipped ownership jurisprudence on its head, by applying the Sengoku presumption in favor of the ***distributor***—rather than in favor of the ***manufacturer*** here.

30

Here, Mr. Rogozinski is the digital equivalent of a manufacturer and Reddit is the digital equivalent of a distributor. Yet, the District Court contravened this basic prescription in finding Reddit to be the owner. That ignored a long-standing legal presumption, fundamental to trademark law's foundational purposes. These errors also ignored trademark law first principles.

In sum, the District Court flouted the first principles of trademark ownership (source); wholly overlooked the consumer perspective so fundamental to determining ownership; and then cited the authority for the manufacturer presumption but ignored how that presumption and its underlying rationale would apply here. For each of these reasons alone, and certainly all of them together, the District Court should be reversed.

ii.   <u>Media</u>

As discussed above, brand owners can and do use the instrumentalities of *other* companies to promote their own brands and to distribute their own marked goods and services to the public.

Doing so doesn't somehow surrender ownership rights. To the contrary, when a manufacturer uses another company to distribute and spread his brand to the public, the law presumes that it is the ultimate source (*i.e.*, the very manufacturer and *not* the distributor) who is and remains the trademark owner. <u>See</u> Section I.B.i, *supra*.

Yet, a brand owner's use of some instrumentalities, like *media* platforms, present an even stronger case of ownership.  After all, media platforms are so obviously just conduits to distribute the content of others, that no serious consumer would think the media platform is itself the source.  That's why brand owners often use media platforms to spread, promote, and advertise their brand to the public, trademark law recognizes that as a use in commerce. And, in turn, that's why using someone else's media platform to promote a brand is recognized as use *by the trademark owner*, not the media platform.

Indeed, brand owners routinely use such media platforms to establish first use of their products—to begin promoting, advertising, and spreading awareness of their own brands.

The District Court contravened such case law and disregarded ordinary consumer perspective when treating publication on media platforms as the first use of the platform when it viewed distribution of a brand on a media platform as foreclosing ownership.

Under traditional trademark principles, a "wide variety" of media uses "may demonstrate 'use' sufficient" to establish ownership.  See, e.g., S.C. Johnson & Son, Inc. v. Nutraceutical Corp., 835 F.3d 660, 666 (7th Cir. 2016).  Brand owners routinely establish ownership and first use by featuring their brands in "advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications, as well as in media outlets such as television and radio." See id.; Underwood v. Bank of Am. Corp., 996 F.3d 1038, 1054 (10th Cir. 2021) (similar); FN Herstal SA v. Clyde Armory Inc., 838 F.3d 1071, 1081 (11th Cir. 2016) (similar); T.A.B. Sys. v. Pactel Teletrac, 77 F.3d 1372, 1375 (Fed. Cir. 1996) (similar).

Indeed, this Court has recognized promoting a brand in "major newspapers including the *Wall Street Journal*, *Washington Post* and *Chicago Tribune*" as indicia of first use of a service mark.  See Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1160 (9th Cir. 2001).  That shouldn't be a surprise: placing a product into media *promotes the brand*.  And, of course, it does so *for the brand's owner*—not the media its placed in.

33

Indeed, courts routinely recognize that "use of a mark, such as publicity in advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications . . . may be adequate to establish prior use in commerce." See Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC, 470 F. Supp. 2d 365, 371 (S.D.N.Y 2007).

Thus, promoting brands through media platforms—even media platforms owned by *other* companies—is a traditional and conventional means of establishing first use and ownership of trademark. From a consumer perspective, it's typically quite clear that the media company itself is not the source, but the conduit for the brand.

For instance, the ordinary reader seeing a brand in the *Wall Street Journal* or the *Washington Post* wouldn't mistake the newspaper itself for the source of the brand. The ordinary viewer of *Fox* or *MSNBC* doesn't mistake the cable-news for the ultimate source of the brands being advertised. Rather, ordinary consumers understand that those media companies themselves are not the source but rather mere conduits and distributors.

And as such, brand owners don't somehow surrender their trademark interests by promoting his brands on *another* company's media. To the contrary, such advertisements demonstrate use in commerce and can be evidence of first use.

Indeed, using a brand in media sources actually promotes brand ownership (both in reality and under trademark law). See, e.g., Transamerica Corp. v. Trans-American Collections, Inc., 1979 U.S. Dist. LEXIS 10911, *3 (N.D. Cal. July 18, 1979) ("used the TRANSAMERICA trade name extensively in advertising in nationwide publications such as 'Fortune,' 'Time,' 'Newsweek,' 'Sports Illustrated,'"Barrons,' 'The Wall Street Journal,' 'Business Week,' 'Forbes,' and 'U.S. News & World Report' as well as television and other media.").

Simply put, widely promoting brands on another company's media platform *is* a use in commerce. From a consumer perspective, consumers grasp that the media is *not* the source, but rather a conduit or platform *for the ultimate source*. Accordingly, advertising brands on mass media platforms, like newspapers, television, or radio, readily demonstrates use in commerce, but without surrendering trademark rights.

A brand owner doesn't somehow surrender their brand by using media to advertise and promote their brand. To the contrary, that use in media is a traditional means of demonstrating use in commerce for marks—for building brand equity and goodwill in them.

\* \* \* \* \*

Below, the District Court contravened this commonsensical approach.

35

The Order acknowledged that Reddit is a social "media platform." 1-ER-3. Yet it failed to recognize that use of a media platform by a brand owner *is* a use in commerce.

Instead, the order found publication of the mark on a mass medium platform to somehow preclude use in commerce. See 1-ER-8 ("after…Rogozinski launched WALLSTREETBETS on the Reddit platform, and, consequently, cannot constitute a first use in commerce"). Worse, it credited the media platform itself as the source. 1-ER-19 ("Reddit is the one providing the online forum,"). In doing so, ignored ordinary consumer perspectives. After all, consumers don't typically believe that the media is the source.

It isn't. The medium is not the source. And thinking otherwise ignores and contravenes how trademark law treats brand owner' use of media platforms to publicize their brand to the public. Indeed, on this point, the District Court committed a series of errors, errors for which it should be reversed.

*First*, the District Court failed to grasp that publication on a media platform—even another company's media platform—can be use in commerce, as the case law makes clear. 1-ER-7-8.

*Second*, the District Court failed to examine consumer perspective—a consumer perspective from which the medium is not the source. 1-ER-6-8 (nowhere examining it).

36

***Third***, it believed the use of a media platform to publicize a brand somehow surrendered ownership rights. This wholly unsupported rationale is nowhere justified by logic, reason, or its authorities. 1-ER-6-8 (nowhere explaining how brand promotion on a social-media platform acted to surrender the rights in the brand).

***Fourth***, the District Court held that a brand owner's use of a media platform as a conduit and instrumentality for his brand's promotion gave the media company first use in commerce—rather than crediting the promotion or advertising to the *source*.

Yet, that approach is antithetical to trademark's treatment of mass media platforms like print, radio, and television. After all, advertising a brand in a newspaper has never surrendered a brand owner's rights or surrendered those brands to the newspaper itself.

Use of media platforms to promote one's brand ***can*** constitute use in commerce, including first use. And such uses of media to promote one's brand don't somehow surrender ownership rights to the media company itself. Indeed, the District Court's approach marks a radical departure from the established trademark law that *credits* rather than *punishes* a brand owner's use of a media company's platform to spread his brand to the public.

For those reasons too, this Court should reverse.

37

iii. <u>Social media</u>

As discussed above, brand owners routinely use a variety of media platforms to promote their brands—such as, in newspapers, on the radio, on television, or a panoply of other mass media platforms. From a customer's perspective those platforms are the media but not the source. Rather, the source is typically recognized to be the brand owner behind the branded product or service. Accordingly, trademark law has traditionally recognized that where a brand owner promotes his brand via media platforms that's use in commerce—*by the* brand owner. <u>See</u> Section I.B.ii, *supra*.

Social *media* platforms easily map onto this traditional approach. After all, like consumers of traditional media platforms, consumers of social media readily recognize that social media platforms are the medium but not the source behind the content and brands being distributed. The District Court ignored the *perspective of the ordinary consumer*, when deciding that a brand owner who promotes his brand to the public via social media platforms somehow surrendered his rights in the mark–and surrenders it to the media platform itself. That upends trademark's traditional approach to use in commerce and subverts trademark's source-identifying function.

Just like with traditional promotions on traditional media platforms, promoting a brand on "social media" can also be indicia and evidence of a brand

owner's use in commerce.    See Gilson on Trademarks § 3.02 [7] [e](2024)

("General Advertisement of the Mark, Online and Offline").

Accordingly, courts *do* recognize that a brand owner's use of social media

promotions can be evidence of the brand owner's use in commerce. See Safeway

Transit LLC v. Disc. Party Bus, Inc., 334 F. Supp. 3d 995, 1006 (D. Minn. Aug.

13, 2018) ("DPB also used the terms in related **social media postings on**

**Facebook and Twitter** […] The Court finds that DPB **used the marks in**

**commerce.**"); Hanginout, Inc. v. Google, Inc., 54 F. Supp. 3d 1109, 1121 (S.D.

Cal. May 12, 2014) ("Accordingly, the Court finds **Hanginout is the senior user**

**of the marks based on** the totality of the circumstances—number of registered

users, **marketing via social media**, and launch of iTunes app in the Apple store to

name a few."); Ortavia D. Simon & Simon Law Group, P.A. v. Nicholson Injury

Law Pa & David Simon Nicholson, 2020 U.S. Dist. LEXIS 258542, *9-10 (M.D.

FL. June 17, 2020) ("Defendants fail to cite any authority to support the

proposition that **advertising on** this type of **social media account** does not

constitute **use in commerce**.").

Moreover, "most issues in trademark law should be determined from the

***perspective of the ordinary purchaser*** of these kinds of goods or services." See

Hana Fin., Inc. v. Hana Bank, 574 U.S. 418, 422 (2015); Hana Fin., Inc. v. Hana

<u>Bank</u>, 735 F.3d 1158, 1164 (9th Cir. 2013) (same); 3 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 17:26 (4th ed. 2013) (same).

*That* perspective would draw an important distinction. Just as with traditional media platforms, when brand owners promote their brands on social media, the ordinary consumer recognizes that use in commerce to trace back to its ultimate source–not the intermediary media platform. When a Facebook user looks at a Starbucks or McDonalds advertisement on Facebook's social media platform, the consumer understands that the Frappuccino or Big Mac marks doesn't owe its source to Facebook's Mark Zuckerberg. The ordinary social media consumer would understand that the branded content may be *on* Facebook but that it's not *from* Facebook–*i.e.*, that Facebook is not the source.

Indeed, this consumer understanding is even *more* heightened in the social media context. That's because "user-generated content" is a central feature of social media platforms such as "Facebook, Youtube, and Twitter[.]" See <u>Am. Freedom Def. Initiative v. Lynch</u>, 217 F. Supp. 3d 100, 105 (Dist. D.C. Nov. 9, 2016); <u>Brunson v. Cook</u>, 2023 U.S. Dist. LEXIS 52717, *11 n.11 (M.D. Tenn. March 28, 2023) ("Instagram is a web-based photo and video sharing social media platform through which users host and share user-generated content."). Most of the content posted to social media platforms is user-generated. Most social media users are themselves also posting content to these social media platforms.

40

So, when a social media user sees branded content, they would understand it may *be on* the social media platform but it would not be *from* the social media platform. The ordinary consumer would readily understand that Facebook, Twitter, Snapchat or Instagram may be the media but that the media is not the source.

Simply put, like traditional promotions on traditional media platforms, promoting a brand on "social media" can also be indicia and evidence of use in commerce. See 1A <u>Gilson on Trademarks</u> § 3.02 [7] [e](2024).

****

Below, the District Court erred in holding otherwise. Indeed, the District Court reached a radical conclusion by holding that a brand owner somehow surrenders his rights by first promoting his brand to the public via a mass media platform. See 1-ER-8. That conclusion runs afoul of trademark first principles and established first use jurisprudence.

Indeed, the conclusion turned on two central errors. ***First***, it failed to examine consumer perspective—a consumer perspective from which the medium is not the source. ***Second***, it ignored that social media platforms are "third-party content" platforms. Taken together, those errors the "totality of the circumstances" surrounding the first use when the mark was launched on a social media platform. <u>Chance v. Pac-Tel Teletrac Inc.</u>, 242 F.3d 1151, 1159 (9th Cir. 2001).

Accordingly, the Order below should not be reversed as to ownership.

iv.   Reddit

This Court has made clear that a first use decision ultimately turns on the "totality of the circumstances[.] See Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1159 (9th Cir. 2001); New West Corp. v. NYM Co. of Calif., Inc., 595 F.2d 1194 (9th Cir. 1979). Moreover, "most issues in trademark law should be determined from the *perspective of the ordinary purchaser of these kinds of goods or services*." See Hana Fin., Inc. v. Hana Bank, 574 U.S. 418, 422 (2015); Hana Fin., Inc. v. Hana Bank, 735 F.3d 1158, 1164 (9th Cir. 2013) (same); 3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 17:26 (4th ed. 2013) (same).

Two specific facts about the Reddit media platform itself is crucial to grasping why the ordinary reddit user would readily grasp that Mr. Rogozinski, not Reddit itself, was the source behind the WALLSTREETBETS mark and the services being offered in association with that mark.

*First*, Mr. Rogozinski was the original "moderator" of the community on which the WALLSTREETBETS mark and its associated services were launched. *Second*, Reddit has an official hands off policy under which moderators are free to run their communities as they wish. *Third*, it would be clear to the *ordinary* Reddit user that Mr. Rogozinski, as the moderator, was the source behind the WALLSTREETBETS mark and the services being under that mark. Reddit users

42

would be familiar with how third-party content was generated to the platform. And, they would be familiar with the role that moderators, like Mr. Rogozinski, play on the communities, as well as Reddit's moderator policies and practices.

The District Court, below, failed to address the perspective of the ordinary Reddit user and those familiar with Reddit when assessing first use. As such, it failed to grasp how Mr. Rogozinski would be viewed and understood as the source behind the WALLLSTREETBETS mark and the associated services.

On January 31, 2012, Mr. Rogozinski launched the WALLSTREETBETS community and served as "the forum's first moderator." 2-ER-158 ¶28. As the first moderator, the ordinary Reddit user would associate Mr. Rogozinski as the source of this mark and these services. 2-ER-149¶32. Indeed, both Reddit users and members of the general public beyond Reddit understood Mr. Rogozinski to be the source behind the mark and its services. 2-ER-153¶43; 2-ER-168-169¶87-88.

Indeed, Reddit's Content Policy and Moderator Policy make clear that "moderators are 'free to run their communities as they choose[.]'" 2-ER-157¶56. As such ordinary reddit users would readily understand the moderator, Mr. Rogozinski as the source of this mark and these services.

A basic feature of Reddit's media platform is that "Moderators create and manage the communities." 2-ER-145-146 ¶21. In that capacity as moderator, Mr. Rogozinski "curated" and "moderated information" and "offered services"

including the providing of financial information "about securities, options, futures, and financial instruments, including stock trading, bond trading, future trading, options trading, forex trading, and commodities trading." 2-ER-147¶25; 2-ER-141¶3. He did all this under the WALLSTREETBETS mark. 2-ER-147¶25.

Yet, the District Court's order failed to grasp the implications of these specific facts in assessing how ordinary reddit users would view Mr. Rogozinski, as the original moderator, as the source behind the first use of the WALLSTREETBETS mark on this particular media platform. 1-ER-8 (finding "unpersuasive" the fact that Rogozinski's "launch and operation of the WALLSTREETBETS" community served as a mark's source-identifying function); 1-ER-19 (discounting the source-identifying significance of Rogozinski's role as moderator).

In doing so, the Order ignored critical factual allegations, misunderstood the source-identifying significance of those allegations, discounted the *perspective of the ordinary* consumer using the site. Taken together, those errors misapplied and misconstrued "totality of the circumstances" surrounding the first use when the mark was launched on a social media platform by Mr. Rogozinski as moderator. Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1159 (9th Cir. 2001).

Accordingly, those errors warrant reversal.

On these factual allegations, and with proper inferences drawn, Reddit users and ordinary consumers would understand Mr. Rogozinski, as moderator, to be the source of WALLSTREETBETS and the services offered in association with that mark. , and failed to "draw all reasonable inferences in favor of the nonmoving party" on this procedural posture. See Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1003 (9th Cir. 2008) ("draw all reasonable inferences in favor of the nonmoving party" on this procedural posture.").

 

v.   <u>CDA-230</u>

Moreover, the very CDA-230 principles that Reddit has invoked below further articulate

**B.  In the alternative, inferences in Mr. Rogozinski's favor would allow factfinder to find for him and to find that Reddit is not the source of brand.**

Trademark disputes typically involve "intensely factual nature" determinations. Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1202 (9th Cir. 2012). In turn, such highly fact-sensitive disputes are not readily-prone for adjudication at the pleadings stage. See Pinterest Inc. v. Pintrips Inc., 15 F. Supp. 3d 992, 998-99 (N.D. Cal. 2014) ("While some courts have decided fact-specific issues regarding trademark protection at the pleading stage, they generally have done so only where the complaint suffers from a complete failure to state a plausible basis for trademark protection.").

Indeed, "most issues in trademark law should be determined from the perspective of the ordinary purchaser of these kinds of goods or services." Hana Fin., Inc. v. Hana Bank, 574 U.S. 418, 422 (2015). In turn, "when the relevant question is how an ordinary person or community would make an assessment, the jury is generally the decisionmaker that ought to provide the fact-intensive answer." Id. Such community-focused, fact-intensive inquiries fall "comfortably within the ken of a jury." Id. Moreover, this Court has made clear that a first use decision ultimately turns on the "totality of the circumstances[.] See Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1159 (9th Cir. 2001); New West Corp. v. NYM Co. of Calif., Inc., 595 F.2d 1194 (9th Cir. 1979).

46

Accordingly, this dispute over competing claims to first use on a community-based online social media platform, implicates a host of highly-fact sensitive inquiries. Indeed, at core it boils down to "which party the ***public believes*** stands behind the product." <u>See Sengoku Works Ltd. v. RMC Int'l, Ltd.</u>, 96 F.3d 1217, 1220; <u>Id</u>. at 1222 ("consumers believed").   It is respectfully submitted that resolution of such a fact-sensitive determination was premature and improper on this procedural posture.

**II.** **THE DISTRICT COURT ERRED ON CDA-230.**

Below, the District Court held that all of Mr. Rogozinski's state law claims were barred by Section CDA-230. 1-ER-10-12. In doing so, the Order committed two basic errors that justify vacating the Section 230 dismissal.

*__First__*, the District Court ignored the necessary nexus between element 2 and element 3 of CDA 230.

Section 230 "protects from liability (1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1100-01 (9th Cir. 2009).

Yet, to determine whether a particular claim should be dismissed under Section 230, a court must identify "the underlying legal duty" and determine whether "it seek[s] to hold the defendant liable as a 'publisher or speaker' of third-party content. HomeAway.com, Inc. v. City of Santa Monica, 918 F.3d 676, 682 (9th Cir. 2019) (citing Doe v. Internet Brands, 824 F.3d 846, 851, 853 (9th Cir. 2016)); see also Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1100-09 (9th Cir. 2009) (conducting claim-specific analysis).

48

Here, holding Reddit liable for breach of contract when they removed Mr. Rogozinski as a moderate is not holding for an editorial decision with respect to third party content. Rather, it is holding them liable for their own managerial decisions. That overlooks the necessary nexus between elements 2 and 3 of the CDA-230 defense. See Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1102 (9th Cir. 2009) ("what matters is whether the cause of action inherently requires the court to treat the defendant as the "publisher or speaker" of content provided by another."). Otherwise put, the operative question that "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.'" Id.

The state law claims here, such as Rogozinski's contract claims, do not "inherently" require the court to treat the defendant as a publisher or speaker. Accordingly it was error to dismiss them under CDA—230.

**_Second_**, the Order erroneously treated CDA–230 as a complete bar to the claims rather than a filter.  Properly applied CDA–230 acts as a filter to certain publisher facts or theories of liability and then evaluates the remaining theories of liability.  See Barnes, 570 F.3d 1096, 1100 ("Looking at the text, it appears clear that neither this subsection nor any other declares a general immunity from liability deriving from third-party content").

Suppose that a complaint has ten facts, of which three facts treat the Defendant a publisher. The text of Section 230 makes clear that only those publisher facts should be eliminated from the complaint and then, with those facts filtered out, a court should assess whether the complaint can still state a claim.

The two central errors below, was (1) ignoring the central nexus between element 2 and element 3 of a CDA-230 defense and (2) failing to factor out publisher-related facts and then evaluate whether or not the complaint still stated a claim. As such, the Order below improperly dismissed claims under CDA–230 when those claims did not "inherently require[] the court" to treat Defendant as a publisher or speaker of content provided by another.

Accordingly, dismissal of the state law claims under CDA-230 should be vacated.

### III.   THE DISTRICT COURT SHOULD HAVE GRANTED MR. ROGOZINSKI LEAVE TO AMEND.

The *first*-amended complaint was dismissed *without* leave to amend.  1-ER-14 (The "*First Amended* Complaint is hereby DIMISSED *without* further leave to amend.").

Yet, Mr. Rogozinski should've been afforded at least one more opportunity to amend his complaint.  <u>See</u> Fed. R. Civ. P. 15(a)(2) ("*The [district] court* should *freely* give leave[...]"); <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (seminal case) (stating that parties "ought to be afforded an opportunity" to amend in the absence of, *inter alia*, "*repeated* failure to cure deficiencies by amendments previously allowed").

Indeed, he *did* ask for leave below.  2-ER-75 ("respectfully prays that this Court […] grants Mr. Rogozinski *leave to further amend his complaint*").  He sought such leave because there *are* myriad additional facts he could allege that demonstrate that *he*—not the medium that he used—was the trademark source of *his* brand and was recognized as such by pertinent market participants—*i.e.*, other users.

Accordingly, amendment wouldn't be futile here.  And, therefore, this Court should reverse the denial of leave and should remand with instructions that the District Court permit Mr. Rogozinski leave to cure any deficiencies via amendment.

51

* * * * *

*First*, this is not a situation where a plaintiff chose to stand on his complaint. Cf., e.g., Gonzalez v. Google LLC, 598 U.S. 617, 621 (2023) (Though "it offered plaintiffs leave to amend their complaint[, …] plaintiffs stood on their complaint and appealed[.]"); Nakka v. U.S.C.I.S., 2024 U.S. App. LEXIS 19594, *5, __F.4th ____ (9th Cir. Aug. 6, 2024) ("Instead of amending their complaint, Plaintiffs filed this appeal.").

*Second*, Mr. Rogozinski *did* request leave to amend, 2-ER-75, although that's not required, e.g., Bacon v. Woodward, 2024 U.S. App. LEXIS 14756, *19-20, __ F.4th __ (9th Cir. June 18, 2024) ("Even if a complaint is deficient, we have repeatedly held that a district court should grant leave to amend *even if no request to amend the pleading was made*, unless it determines that the pleading could not be cured by the allegation of other facts." (italics in case, cleaned up); Unified Data Servs., LLC v. FTC, 39 F.4th 1200, 1208 (9th Cir. 2022) ("[W]e have repeatedly instructed that ***leave to amend should be given, even sua sponte***, if amendment could cure a pleading defect."); Lopez v. Smith, 203 F.3d 1122, 1130-1131 (9th Cir. 2000) (en banc) (same).

52

*Third*, the federal rules and standards of pleading are predicated on generous allowances of leave to amend.  It should be freely given.  <u>E.g.</u>, Fed. R. Civ. P. 15(a)(2) ("*freely give[n]*"); <u>Bacon</u>, 2024 U.S. App. LEXIS 14756, at *19, __ F.4th at __ (9th Cir.) ("*extreme liberality*"); <u>Bolden-Hardge v. State Controller</u>, 63 F.4th 1215, 1221 (9th Cir. 2023) ("Leave to amend should be granted *generously*[.]").

*Fourth*, the District Court gave no stated reason for denying leave to amend. 1-ER-14; <u>see</u> <u>Foman</u>, 371 U.S. at 182 ("[O]utright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules."); <u>Sanchez v. L.A. DOT</u>., 39 F.4th 548, 562 (9th Cir. 2022) ("Courts are to 'consider the relevant factors and articulate why dismissal should be with prejudice instead of without prejudice[.]'").

*Fifth*, it was the *first*-amended complaint.  2-ER-140.  So, this isn't a situation of "*repeated* failure to cure deficiencies by amendments previously allowed[.]"  <u>See</u> <u>Foman</u>, 371 U.S. at 182; <u>see also</u> <u>Espy v. J2 Glob., Inc.</u>, 99 F.4th 527, 542 (9th Cir. 2024) ("two chances"); <u>Amalgamated Bank v. Facebook, Inc.</u>, 84 F.4th 844, 856 (9th Cir. 2023) ("leave to amend both times"); <u>Donovan v. Vance</u>, 70 F.4th 1167, 1171 (9th Cir. 2023) ("three opportunities").

53

*Sixth*, additional facts could cure.

As to trademark claims (federal and UCL), Mr. Rogozinski could allege myriad further facts about the source-identification of WALLSTREETBETS from the consumer and user perspective; about the critical factual distinctions between the instrumentality of the online platform and the indicators of an underlying source as to the relevant online users; about the brand perceptions that arise from *media* usage generally and online *social media* promotion specifically; with even greater detail on why the nature of *Reddit* and, more importantly, *Reddit's users* would mean they *knew* that Reddit was *not* the *source* of WALLSTREETBETS, but merely a *medium* for it. <u>See</u> Section I, *supra*. Of course, this list is illustrative, not exhaustive, insofar as he could conduct additional market research and focus groups on the topic.

As to the other state claims, Mr. Rogozinski could allege further wrongful acts by Reddit and also give greater detail regarding how many acts were independent of third-party content and posting but rather were implemented by Reddit exclusively. <u>See</u> Section II, *supra*.


*Seventh*, if the Court isn't sure, that means Mr. Rogozinski should be given a chance to amend.

Because it is at least "***possible***" additional facts could affect the outcome below, leave to amend *should've* been granted.  See, e.g., Lopez, 203 F.3d at 1130 (9th Cir.) (en banc); *id.* (denial appropriate only if "the pleading could not *possibly* be cured by the allegation of other facts"); Perez v. Mortg. Elec. Registration Sys., 959 F.3d 334, 340 (9th Cir. 2020) (same); B&G Foods N. Am., Inc. v. Embry, 29 F.4th 527, 542 (9th Cir. 2022) (reversing denial of leave to amend "because it is *unclear* whether amendment would be futile"); Webb v. Trader Joe's Co., 999 F.3d 1196, 1204 (9th Cir. 2021) ("Dismissal with prejudice and without leave to amend is ***not*** appropriate unless it is clear *on de novo review* that the complaint could ***not*** be saved by amendment.").

\* \* \* \* \*

In sum, one final chance to amend should be granted to Mr. Rogozinski. Likewise, the District Court's unexplained denial of leave to amend should be reversed.

**IV.   THERE ARE SIGNIFICANT POLICY IMPLICATIONS TO THIS APPEAL.**

*__First__*, it's critical to focus the issue on appeal. This appeal presents the narrow, discrete question of trademark ownership. It does not implicate broader questions of infringement.    Notably, trademark ownership and infringement present distinct legal and factual questions.  See Silvers v. Google Inc., 2006 U.S. Dist. LEXIS 110447, *12 (S.D. FL. Feb. 6, 2006) ("In this case, the question of ownership involves different factual and legal determinations, compared to the infringement and damages issues."). Indeed, those discrete issues implicate distinct legal, factual, and policy considerations.

As such, one could agree that Mr. Rogozinski owns the trademark in his brand, *even if* one believed there to be no infringement. The discrete, narrow question on appeal is simply about ownership in the mark itself.


*__Second__*, it's worth noting that different social media platforms have charted different courses as to how they treat the users who generate valuable content for the social media company. As a general matter, social media platforms benefit substantially from user generated content, especially user-generated content that drives traffic to their sites. Some social media platforms have permitted users to monetize and share in the proceeds of the economic benefits. Platforms such as Youtube have pioneered monetization programs that permit users to become

56

partners in the platform's success. Here, Reddit took a drastically different approach, trying to steal (and monopolize) the goodwill generated by a user's promotion of a valuable and desirable brand related to financial services.

***Third***, there are anti-competitive implications to this dispute between ownership in a brand between the brands creator and the media platform trying to monopolize that brand. Whereas, Mr. Rogozinski has every incentive to share and promote his brand across many social media platforms and across society generally, Reddit, by contrast, has every incentive to monopolize that brand in hopes of driving traffic to their own social media platform at the expense of other platforms.

## CONCLUSION

This Court should reverse and remand. Even if the Court does not think Mr. Rogozinski has stated a claim in some respect—be it on trademark ownership or a state-law claims once filtered of CDA 230-protected acts—the Court should nonetheless remand with instructions to the District Court to grant one further chance to amend.


Date: August 9, 2024

Respectfully submitted,

DIGITAL JUSTICE FOUNDATION

*/s/ Gregory Keenan*
Gregory Keenan
DIGITAL JUSTICE FOUNDATION
81 Stewart Street
Floral Park, NY 11001
(516) 633-2633
Gregory@DigitalJusticeFoundation.org

*Attorney for Appellant*

58

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, the undersigned hereby certifies that there are no related cases:

(a) There is no other case pending in this Court that arises out of the same case in the District Court.

(b) There is no other case pending in this Court raising the same or closely related issues.

(c) There is no other case pending in this Court involving the same transaction or event.

Date: August 9, 2024                    Respectfully submitted,

                                        */s/ Gregory Keenan*
                                        Gregory Keenan

59

## FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 24-791

I am the attorney or self-represented party.

**This brief contains 11,644 words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties.

    [ ] a party or parties are filing a single brief in response to multiple briefs.

    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** */s/ Gregory Keenan*          **Date** August 9, 2024
                *(use "s/[typed name]" to sign electronically-filed documents)*

60

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed with the Court via electronic filing.


Date: August 9, 2024                    Respectfully submitted,

                                        */s/ Gregory Keenan*
                                        Gregory Keenan